UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

Bky No. 09-34220-RJK

In re:
PRAIRIE WILD ENTERPRISES, INC.
aka PRAIRIE WILD ENTERPRISES, INCORPORATED,
Debtor.

## STIPULATION REGARDING FINAL USE OF
## CASH COLLATERAL
## AND FOR ADEQUATE PROTECTION

This Stipulation regarding Interim Use of Cash Collateral and for Adequate Protection is made and entered into this ____ day of August, 2009, by and between the Debtor and the Co-op Credit Union of Montevideo (the "Credit Union"), through their respective counsel.

## RECITALS

1. Debtor filed a petition with the United States Bankruptcy Court for the District of Minnesota (the "Court") seeking relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Code") on June 18, 2009 (the "Petition Date").

2. The Debtor is indebted to the Credit Union by virtue of various promissory notes executed and delivered by the Debtor to the Credit Union, in the approximate amount of $680,000.00.

3. As security for Debtor's performance and payment obligations under the notes, Debtor executed and delivered to the Credit Union security agreements, wherein Debtor pledged all its personal property, including all accounts, inventory, equipment, chattel papers, general intangibles, etc., granting the Credit Union a security interest in all of the Debtor's assets to secure the repayment of the indebtedness (the "Collateral").

4. On June 25, 2009, this Court entered an Interim Order authorizing the use of cash Collateral, which expired on July 29, 2009.

5.  The Debtor continues to desire to use the proceeds of any collection or accounts and the proceeds of any sale of the Debtor's inventory which would constitute cash Collateral within the meaning of Section 363(c)(2) under the Code, all in the operation of its business as debtor in possession under Section 1101, et seq. of the Code.

NOW, THEREFORE, in consideration of the foregoing recitals, the Debtor and the Credit Union hereby stipulate and agree as follows:

1.  The Credit Union consents to the entry of an order authorizing the Debtor's use, under the terms of this Agreement and in the ordinary course of its business, of cash Collateral and inventory of the Debtor, including all other Collateral described in the security agreement and any post-petition accounts and inventory generated by the Debtor in this case, in accordance with the budget attached hereto as Exhibit A. Each category of the budget will be capped at the amount listed and any excess or unusual monies in any category cannot be used for other purposes without the written consent of the Credit Union. Jon and Melissa Mohn's total payments received cannot exceed $1,000.00 per month, each.

2.  Debtor agrees that it will properly maintain the Collateral as described in the security agreement and keep the same insured against physical damage and loss and will permit the Credit Union or its authorized representative, to conduct any reasonable inspection or evaluation of the Collateral provided a request is made before hand to meet at a mutually convenient date and time which, in no event, shall be no more than three (3) business days from the date of the request.

3.  Debtor will not use the Collateral, including cash Collateral, for any purpose which is not authorized by Title 11 of the Code or by order of this Court.

4. <u>Adequate Protection:</u>

    a.    Pursuant to the requirements of Section 363(e) of the Code as adequate protection for the Credit Union for the use of cash Collateral, Debtor grants to and the Credit Union shall have, replacement liens on all types of post-petition assets of the Estate in which the Credit Union claims a security or other interest as of the date of the filing, with such lien to have the same priority, dignity, validity and effect on post-petition property that the Credit Union, security or other interest have on the prepetition assets of the Debtor.

    b.    The Debtor shall provide to the Credit Union weekly inventory of all seed (clean and uncleaned) owned by the Debtor. The weekly inventory report to be provided by the Debtor to the Credit Union shall include an itemization of all inventory/seed sold during each seven (7) day reporting period, an itemization of the proceeds derived from the sale of the Debtor's inventory during each reporting period, and the identification of any new inventory purchased by the Debtor during each reporting period.

    c.    The Debtor will, and hereby does, provide the Credit Union with a replacement lien that shall be of the same dignity and priority as the Credit Union's pre-petition lien on all the Debtor's assets.

    d.    As adequate protection for the Credit Union for the use of cash collateral, Debtor will make weekly payments of $250.00 to the Credit Union upon execution of this Agreement, and each week thereafter for a period of eight (8) weeks; thereafter, the Debtor will make weekly payments of $500.00 to the Credit Union until the expiration of this Stipulation and /or in the Event of Default, whichever occurs earlier. All payments

to the Credit Union under this Stipulation shall be postmarked and mailed to the Credit Union no later than Monday of each week.

  e. Debtors and the Credit Union agree that the replacement liens granted to the Credit Union herein, in no way affect or include Chapter 5 causes of action under the Code.

  f. To the extent that the Credit Union is or becomes unsecured by the Debtor's use of Cash Collateral, Debtor grants the Credit Union a security interest in the proceeds recovered from the litigation entitled *Prairie Wild Enterprises, Inc. v. Gayle E. Bofferding, et al* (Court File No. 27-CD-08-8397) (the "State Court Action"). In the event of an award under the State Court Action, the debtor will hold $250,000.00, in escrow, pending final determination of the Credit Union's status as a fully secured and/or undersecured creditor.

  g. Debtor will not liquidate any machinery, equipment, tools or shop supplies without the written consent of the Credit Union and approval of this Court.

  h. Debtor will maintain seed inventory at 97% the existing value as determined and calculated by the Debtor and Credit Union.

5. Debtor acknowledges and agrees that the security interest held by the Credit Union in the Collateral as described in the security agreements is valid, enforceable, perfected and creates a security interest in such Collateral and is a fully secured creditor entitled to its attorney's fees, costs and expenses as provided for herein. Nothing contained herein, however, shall in any way prejudice the Credit Union's right to object to any Plan of Reorganization proposed by the Debtor.

6. <u>Reports</u>. Without demand, Debtor shall furnish Credit Union and its counsel with weekly reports of its cash expenditures and accounts receivable listing.

7. <u>Event of Default</u>. The following shall constitute an Event of Default:

    a. Debtor fails to comply with any of its obligations under this agreement.

    b. Debtor fails to permit the Credit Union to conduct any reasonable inspection of the Collateral set forth herein.

    c. Debtor fails to provide inventory reports and other reports as set forth herein, or maintain insurance on the Collateral.

    d. The case is dismissed or converted to a case under Chapter 7 of the Code, or a Trustee is appointed in this case.

8. <u>Termination</u>. The agreement shall terminate on December 30, 2009, or, upon the occurrence of an Event of Default and the expiration of five (5) days written notice hereof to the Debtor and its counsel.

9. <u>Relief from Stay</u>. In the event Debtor fails to provide any reports and/or payments as set forth and required herein, time being of the essence, the Credit Union may send a default notice to the Debtor via U.S. Mail and its counsel via U.S. Mail. The Debtor shall have five (5) days from the date of the notice to cure the default[s]. If the Debtor fails to timely cure the defaults, then the Debtor's authority to use cash collateral is immediately terminated without further notice or further order of the Court. Additionally, the Credit Union shall be entitled to an order granting the Credit Union immediate relief from the automatic stay without a motion upon the filing of an application for order and affidavit proving the default. Upon entry of the order granting relief from stay, the Credit Union shall be free to pursue any and all of its remedies in accordance with applicable law. The

Debtor agrees upon request by the Credit Union to assemble and surrender its inventory, machinery and equipment, to the Credit Union, and to cooperate in a liquidation of such inventory.

10. This agreement is subject to and shall be effective only upon the entry of an Order of the Court authorizing the Debtor to enter into and perform hereunder.

Dated this 11 day of August, 2009

_____
Michael S. Dove  #214310
GISLASON & HUNTER LLP
Attorneys for Co-op Credit Union of Montevideo
2700 South Broadway
P. O. Box 458
New Ulm, MN 56073-0458
Phone: 507-354-3111
Fax: 507-354-8447

Dated this 11 day of August, 2009

_____
James T. Anderson
Attorney for Debtor
17736 Excelsior Blvd.
Minnetonka, MN 55345
Phone: 952-356-6470

675358.1

6

# Prairie Wild Enterprises Inc

## Exhibit A, FINAL USE OF CASH COLLATERAL BUDGET

|  | July 29-August 31 | Sept. 1-30 |
|---|---|---|
| **DISBURSEMENTS:** | | |
| Utilities | $ 1,200.00 | $ 1,200.00 |
| Insurance | $ 3,500.00 | $ 3,500.00 |
| Payroll Taxes | $ 2,000.00 | $ 2,000.00 |
| Employee Wages | $ 12,000.00 | $ 12,000.00 |
| Contract Labor | $ 2,000.00 | $ 2,000.00 |
| Rent - Equipment | $ 2,750.00 | $ 2,750.00 |
| Advertising | $ 400.00 | $ 400.00 |
| Repairs & Maintenance | $ 1,500.00 | $ 2,000.00 |
| Diesel | $ 3,000.00 | $ 3,000.00 |
| Seed | $ 1,000.00 | $ 1,000.00 |
| TOTAL EXPENSES | $ 29,350.00 | $ 29,850.00 |

# Prairie Wild Enterprises Inc

## Exhibit B, FINAL USE OF CASH COLLATERAL BUDGET

|  | Oct. 1-31 | Nov. 1-30 | Dec. 1-31 |
|---|---|---|---|
| **DISBURSEMENTS:** | | | |
| Utilities | $ 1,750.00 | $ 2,000.00 | $ 2,000.00 |
| Insurance | $ 3,500.00 | $ 3,500.00 | $ 3,500.00 |
| Payroll Taxes | $ 2,000.00 | $ 2,000.00 | $ 3,000.00 |
| Employee Wages | $ 12,000.00 | $ 12,000.00 | $ 10,000.00 |
| Contract Labor | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 |
| Rent - Equipment | $ 2,750.00 | $ 1,750.00 | $ 1,750.00 |
| Advertising | $ 400.00 | $ 400.00 | $ 400.00 |
| Repairs & Maintenance | $ 2,000.00 | $ 1,000.00 | $ 2,000.00 |
| Diesel | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 |
| Seed | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 |
| **TOTAL EXPENSES** | $ 31,400.00 | $ 29,650.00 | $ 29,650.00 |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

Bky No. 09-34220-RJK

In re:
PRAIRIE WILD ENTERPRISES, INC.
aka PRAIRIE WILD ENTERPRISES, INCORPORATED,
Debtor.

**ORDER**

This case came before the Court on Thursday, July 29, 2009, upon the Debtor's Motion for Final Use of Cash Collateral. At the hearing, counsel for the Debtor recited that an agreement had been reached and that a Stipulation would be submitted to the Court for consideration. On August ____, 2009, Debtor's counsel filed a Stipulation.

The Court having reviewed the Stipulation, IT IS HEREBY ORDERED:

1. The Stipulation is approved and the Debtor is authorized to perform thereunder and to grant the adequate protection and replacement lien as set forth and required in the Stipulation.

2. As adequate protection for the Debtor's use of the Credit Union's cash collateral, the Debtor may grant a security interest as a replacement lien on the same priority, dignity and effect as the Credit Union's pre-petition liens and security interest and such types of property as the Credit Union held security in prior to the filing date, and, to the extent that the Credit Union becomes an undersecured creditor in the proceeds of the State Court litigation, as more fully described in the Stipulation. Such security interest and replacement liens shall be deemed perfected as of the filing date without the need for additional perfection or filing.

3. As additional adequate protection, the Debtor shall provide the Credit Union with written reports, accountings, and payments as set forth in the Stipulation.

4. In the event the Debtor fails to timely provide any written reports and/or payments as required under the Stipulation, the Credit Union may send the default notice to the Debtor and thereafter the Debtor shall have five (5) days from the date of the notice to cure the default. If the Debtor fails to timely cure the defaults, then the Debtor's authority to use cash collateral of the Credit Union's is immediately terminated without notice or further order of this Court. The Credit Union shall be entitled to an order granting the Credit Union immediate relief from the automatic stay without a motion upon filing of an application for an order and affidavit proving the default. Upon entry of the order granting relief from stay, the Credit Union shall be free to pursuant any or all of its remedies in accordance with applicable law. The Debtor shall, upon request by the Credit Union, assemble and surrender its inventory, machinery and equipment to the Credit Union and cooperate in the liquidation of such Collateral as defined in the Stipulation.

Dated this ____ day of August, 2009.

_____
Robert J. Kressel
United States Bankruptcy Judge

688206.1

2