## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In Re:                                  Bky Case No. 09-34220

      Prairie Wild Enterprises Inc.,              Chapter 11 case


      Debtor.

---

## APPLICATION FOR CONDITIONAL APPROVAL OF
## DISCLOSURE STATEMENT, PURSUANT TO LOCAL RULE 3017-1.1

---

COMES NOW Prairie Wild Enterprises Inc., a Minnesota corporation, ("Debtor"), and hereby submits this Application for Conditional Approval of Disclosure Statement, pursuant to Local Rule 3017-1.1.

1. The Debtor has elected to have this case treated as a small business case.

2. Pursuant to Local Rule 3017-1.1(a), if the Debtor has elected treatment as a small business, the proponent of the plan shall file a plan and a proposed disclosure statement, together with an application requesting conditional approval of the disclosure statement. The plan and the proposed disclosure statement, together with the application shall be served on the debtor, the United States Trustee, and, if one has been appointed, on the committee of unsecured creditors. The Debtor has filed its plan and the proposed disclosure statement, and this application, all of which have been served on the United States Trustee.

3. Pursuant to Local Rule 3017-1.1(a), the United States Trustee, and any Committee shall serve and file objections, if any, to the terms of the proposed disclosure statement within seven days of service of the Proposed Disclosure Statement and Plan on the United States Trustee or Committee. If no timely objections are filed and served, then the court may enter an order

conditionally approving the disclosure statement. If objections are timely filed, the court may schedule a hearing on the objections, or may enter an order granting or denying conditional approval of the disclosure statement without a hearing. The debtor filed its Plan and Proposed Disclosure Statement on September 15, 2009. Therefore, the deadline to object to the Proposed Disclosure Statement would be September 22, 2009.

4. The Debtor believes that the Proposed Disclosure statement provides adequate information to allow its creditors to make an informed decision regarding their votes for the Debtor's Chapter 11 Plan. The Debtor respectfully requests that the Court conditionally approve the Disclosure Statement, as provided in Local Rule 3017-1.1, and enter the attached Order.


Dated: September 15, 2009.

**Prairie Wild Enterprises Inc.**


By:    **/e/ Jon Mohn**
         Jon Mohn
         Its President

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

IN RE:

PRAIRIE WILD ENTERPRISES INC.

DEBTOR.

BKY NO. 09-34220

CHAPTER 11 CASE

---

DISCLOSURE STATEMENT

DATED SEPTEMBER 15, 2009

**James T. Anderson**
Attorney Reg. No. 0388199

Law Office of James T. Anderson
17736 Excelsior Boulevard
Minnetonka, Minnesota 55345
Telephone:   (952) 356-6470
Facsimile:   (952) 223-6348

Attorney for the Debtor
Prairie Wild Enterprises Inc.

# INTRODUCTION

This Disclosure Statement is submitted by Prairie Wild Enterprises Inc. ("Debtor"). Debtor filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code on June 18, 2009. Debtor files and submits this Disclosure Statement in connection with its Plan of Reorganization dated September 15, 2009. (the "Plan"). This Disclosure Statement is provided to creditors to provide them with information relevant to the Plan and to enable creditors to make informed decisions concerning their vote on the Plan. Parts of the Plan are incorporated into this Disclosure Statement and a copy of the Plan is included in this voting packet. Capitalized terms used in this Disclosure Statement shall have the meanings ascribed to them in the Plan or in Bankruptcy Code, unless the context requires otherwise.

In order to obtain confirmation of the Plan, the Court must determine whether the Plan has been approved by the holders of claims in each class which is considered impaired under Bankruptcy Code. The Court has set a deadline for filing ballots accepting or rejecting the Plan. The deadline is set forth in the enclosed Order and Notice Regarding the Approval of the Disclosure Statement, Acceptance or Rejection of the Plan, and Hearing on Confirmation of the Plan. Please mail your original ballot to the **Clerk of the United States Bankruptcy Court, 300 South Fourth Street, Minneapolis, Minnesota, 55402**, in time for it to be **RECEIVED** not later than the date in the lower right hand corner of the ballot and as indicated in the Court's Order, a copy of which is attached.

In the event that one or more classes reject the Plan, The Bankruptcy Court may nevertheless confirm the Plan if The Bankruptcy Court finds that the Plan accords fair and equitable treatment of any class rejecting it. This means that pursuant to 11 U.S.C. § 1129(b), the Plan may be confirmed even if a class of claims or interests rejects it, so long as the Plan provides

that (1) each holder of a claim or interest in the rejecting class receives the value of that claim or interest; or (2) no holder of a claim or interest junior to those held by members of the rejecting class will receive a retained value under the Plan. **Debtor reserves the right to seek confirmation under 11 U.S.C. § 1129(b), and the right to modify the Plan to the fullest extent allowed by Bankruptcy Code §1127.**

Debtor's Disclosure Statement is furnished pursuant to §1125 of Bankruptcy Code and is furnished to provide all persons known to have claims against the Debtor with sufficient information to permit them to make an informed judgment as to their vote on whether to accept or reject the Plan. No representations concerning the Debtor, particularly as to its future business operations, or the value of its property other than those set forth in this Disclosure Statement are authorized by the Debtor. **ANY REPRESENTATION OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN THOSE IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND ANY SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO THE DEBTOR OR TO THE UNITED STATES TRUSTEE, WHO, IN TURN, SHALL DELIVER THIS INFORMATION TO BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.**

The financial information contained in this Disclosure Statement has been provided by the Debtor but has <u>not</u> been independently audited. All statements concerning financial data are made in good faith and are intended to be as complete and as accurate as possible within these limitations. Neither the Debtor nor its counsel are aware of any inaccuracies.

# 1.  DEFINITIONS

The definitions set forth in the Plan are used in this Disclosure Statement.

# 2.  NATURE AND HISTORY OF DEBTOR'S BUSINESS

The Debtor is a corporation organized and existing under the laws of the State of Minnesota.  At the time of filing the petition, and at the time of the filing of this Disclosure Statement, the shareholders of the Debtor are Jon Mohn and Melissa Mohn.  The afore-mentioned shareholders each hold a fifty percent (50%) interest in the Debtor.  Mr. Mohn and Mrs. Mohn are active in the business.

The Debtor is engaged in the business of cleaning, harvesting and selling wild grass seed in Minnesota, North Dakota, South Dakota and Iowa.  The Debtor's business is seasonal, the Spring and Fall months are where the debtor makes most of its income.  Debtor's financial difficulties, which led to the commencement of this bankruptcy case, relate directly to a fire in one of the storage facilities of the Debtor. During the fall of 2007, a fire started in a storage facility of the Debtor, destroying several hundred thousand dollars worth of Debtor's equipment and inventory.  The Debtor believed it would be covered under the Debtor's insurance and would therefore be reimbursed for the loss of inventory and equipment.  The Debtor's insurance company denied the claim, forcing the Debtor to sue its insurance company to recover the value of the lost equipment and inventory.   As a result of the lost equipment, inventory and the length and cost of the suit against the insurance company the Debtor was unable to fulfill orders from clients for products and services, thereby severely reducing its operating capital, to the point that the business fell behind on its secured debt service. Thereafter the Debtor attempted to restructure its secured loans with Co-op Credit Union of Montevideo ("Co-op"), the only secured creditor, but ultimately the Debtor was unable to obtain the required refinancing with Co-op and other lenders.

On the Petition Date Co-op seized substantially all of Debtors assets, bringing the Debtor's business to a standstill. Faced with collection efforts by the secured lender, and the threats of the same from the IRS and the Minnesota Department of Revenue, Debtor determined to file for relief under Chapter 11 of the United States Bankruptcy Code to reorganize its business and financial affairs.

During and immediately prior to the filing of this case, Mr. Mohn has been actively employed by the business and has generally increased the business revenues and at the same time has decreased the business expenses. The Debtor's revenues suffered greatly during the approximately two weeks the Debtor's assets were in the possession of Co-op. However, after the assets of the Debtor were returned, Mr. Mohn was able to greatly reduce the expenses of the Debtor and return the revenues of the Debtor to their historical levels. As a result, Mr. Mohn believes that the business is able to generate the necessary revenues and profit to fund a Plan of Reorganization.

### 3.   TRANSACTIONS DURING BANKRUPTCY CASE

Generally, the Debtor has operated its business in the ordinary course as Debtor in Possession, and has recently generated average monthly profits of about $13,000.00 per month even though, due to the seasonal nature of the Debtors business, the months of June, July and August are its slow months.   Generally, operations during the case have improved significantly compared to its pre-petition operating history.   The Debtor has consolidated its business locations to a single site, reduced its payroll obligations and reduced the size overall expenses of the business while keeping the business profitable over all.   This is due in part to the facts and circumstances discussed above.   The expenses and gross profits while operating as Debtor in Possession are shown in the Attached Exhibit A.   Exhibit A consists of 2nd and 3rd quarter profit and loss statements of the Debtor.

### 4.   TRANSACTIONS WITH INSIDERS

Debtor is a closely held corporation and has had several transactions with insiders. Generally, the transactions fall into one category, that being the compensation of the shareholders. Throughout the case the Mohns have received combined compensation of approximately $13,000.00.   All such transactions have been reported on the Monthly Operating Reports. It is expected that there will be no changes to the payroll arrangements for the foregoing insiders after confirmation of the Plan.

## 5.   GENERAL DESCRIPTION OF THE PLAN

Generally, the Plan provides for the satisfaction in full of the allowed secured claims, priority tax claims and allowed unsecured claims.   The Plan contemplates that all distributions provided for will be funded from income from operations, and payments may be accelerated if the Debtor is successful in recovering a verdict in the ongoing litigation against its former insurance company, and further, that the Debtor will act as its own disbursing agent.

## 6.   UNCLASSIFIED CLAIMS; TREATMENT

**(a)     PRIORITY UNSECURED TAX CLAIMS ENTITLED TO PRIORITY PURSUANT TO §507(a)(8) OF UNITED STATES BANKRUPTCY CODE, INCLUDING THE CLAIMS OF THE UNITED STATES INTERNAL REVENUE SERVICE, AND THE MINNESOTA DEPARTMENT OF REVENUE.**

For the purposes of the Plan, these tax claims will include taxes assessed pre-petition but payable post-petition as well as taxes expected to be assessed post-petition. Based on a Proof of Claim dated July 9, 2009, Debtor estimates that the total amount of the Internal Revenue Service's unclassified claim will be approximately $110,788.15.   Debtor estimates that the total amount of the Minnesota Department's unclassified claim will be approximately $31,046.00.   These claims will be paid in full plus interest at the rate provided for by statute and regulation, fixed as of the Effective Date, which is currently estimated to be 4 percent.   Payments will be made by even monthly distributions directly to the Internal Revenue Service, and the Minnesota Department of Revenue.   Based on the foregoing assumptions, it is anticipated that regular monthly payments of $2,040.33 will be paid to the Internal Revenue Service, and payments of $571.76 will be paid to the Minnesota Department of Revenue. All priority tax claims, as herein set forth will be paid within five (5) years of the date of commencement of this case.   Debtor reserves the right to accelerate payments to these creditors.

**(b)  ADMINISTRATIVE EXPENSES ENTITLED TO PRIORITY PURSUANT TO §§ 507 AND 503(b)(2) OF THE UNITED STATES BANKRUPTCY CODE.**

These claims include attorney's fees for the Debtor's attorneys as may be approved and awarded by the Court pursuant to §330(a) of the United States Bankruptcy Code.  The Debtor estimates aggregate administrative priority claims for professional persons will be approximately $10,000, or less, excluding any amounts currently held in trust by Debtor's attorney for matters relating to this representation and excluding any amounts previously approved by Court Order. Allowed administrative expenses entitled to priority pursuant to §503(b)(2), shall be paid in full to the extent allowed by court on the Effective Date from Debtor's operating revenues, or as otherwise may be agreed between Debtor and the Debtor's attorneys.

**(c)  ADMINISTRATIVE CLAIMS ENTITLED TO PRIORITY PURSUANT TO §§507 AND 503(b)(1) OF THE UNITED STATES BANKRUPTCY CODE.**

Debtor estimates that there may be between $1,000.00 and $2,000.00 of current trade payables due and owing which would be entitled to priority under §503(b)(1).  All such claims shall be paid on the Effective Date or as they come due in the ordinary course of business, whichever is later.

**(d)  UNITED STATES TRUSTEE'S FEES AND OTHER COURT COSTS AND FEES ASSESSED OR ASSESSABLE PURSUANT TO 28 U.S.C. § 1930 (a) AND (b).**

Debtor estimates that unpaid trustee's fees, court fees, and other fees assessable pursuant to these provisions and remaining unpaid as of the Effective Date will be under $2,000.00 and will be paid on or before the date of confirmation.  All such fees and expenses will be paid on the Effective Date or in the ordinary course of business from Debtor's operating revenues.

# 7. CLASSIFIED CLAIMS; TREATMENT

**(a) CLASS ONE (SECURED CLAIM).**

Class One consists of the secured claim of Co-op Credit Union of Montevideo. ("Co-op").   Co-op has a judgment against the Debtor stemming from several loans in the amount of $678,226.52, plus interest and attorneys fees from and after the Petition Date, and less any payments made by the Debtor after the Petition Date.   The Debtor herewith provides for treatment of Co-op's allowed claim in its Plan of Reorganization as set forth below.

(1)      *Allowed Secured Claim.*   Co-op shall have an allowed secured claim in the amount of $678,226.52, plus interest, at a rate stated hereinafter, and costs, including attorneys fees, from and after the Petition Date, and less any payments made by the Debtor after the Petition Date ("Co-op's Secured Claim").

(2)      *Interest*.       Interest on Co-op's Secured Claim shall accrue at the rate of 4 per cent per annum.

(3)      *Collateral*.   Co-op's Secured Claim is secured by and shall continue to be secured by a lien on the Debtor's:

a.       Inventory;

b.       Accounts and other Rights to Payments, (including payment for property or services sold, leased, rented, licensed or assigned);

c.       Equipment, (including machinery, vehicles, furniture, fixtures, shop equipment and office and record keeping equipment, and parts and tools);

d.       General Intangibles, including customer lists, payment intangibles,); and

e.       Proceeds and Products from the collateral, including parts, accessories, repairs, replacements, improvements and accessions and anything acquired upon the sale, lease, license, exchange or other disposition of the property,

any rights and claims arising from the property and any collections and distributions on account of the property.

f.  Proceeds from the litigation against its previous insurance agent and insurance company in Prairie Wild Enterprises, Inc vs. Gayle Bofferding; Brown & Brown of Minnesota, Inc, a corporation and Westfield Insurance Company, a corporation, Court File 27-CV-O8-8397.

(collectively, the "Collateral").   Co-op's Secured Claim is also secured by, and shall continue to be secured by a replacement lien on all property of the same types as the Collateral, now existing or at any time becoming property of the estate of the Debtor. Co-op's lien securing Co-op's Secured Claim is a first priority lien in the Collateral and shall survive confirmation of the plan.   Co-op shall not be required to file any financing statements or other documents in any jurisdiction or to take any action to create, validate or perfect the lien that secures Co-op's Secured Claim.

(4)  *Payment*.   The Debtor shall pay Co-op's Secured Claim in accordance with the terms set forth herein.   The Debtor shall pay monthly installments of $9,270.26 per month commencing the Effective Date of the Plan and continuing each month until January 15, 2017 at which time the entire unpaid principal balance, accrued interest and all other sums owing Co-op will be due and payable in full. Debtor estimates that the remaining balance to be paid to FNB, at the conclusion of the Plan payments will be approximately $0.00.

(5)  *Continuity of Loan Documents*.   The terms and conditions of all loan documents executed by the Debtor in favor of Co-op before the Petition Date or thereafter shall continue to apply and remain in full force and effect, to the full extent said terms are not inconsistent with the terms of the plan.

(6)  *Default*.    The Debtor's failure to perform in full accordance with any or all of the undertakings and obligations contained in the plan or the loan documents shall be an event of default, giving rise to Co-op's rights, to the full extent, as provided for in the loan documents executed by the Debtor in favor of Co-op before the Petition Date or thereafter, to enforce payment and exercise its rights as a secured creditor.

(7)  *Miscellaneous*.    The Debtor will execute any other reasonably necessary and appropriate documents in such form as is reasonably necessary and appropriate to carry out the intent of the Plan.   The parties that guarantied the debt owed to Co-op will ratify and reaffirm their guaranties of the indebtedness owed Co-op, as modified by the terms hereof, and will acknowledge that their guaranties continue in full force and effect.

## (b) CLASS TWO (SECURED CLAIM).

Class Two consists of one former executory contract (lease) with Hi Line Credit. The lease relates to three (3) Great Plains Drills, the lease had residuals at the end of the lease, and the Debtor would acquire full ownership of the drills at the end of the lease term. The lease expired prior to the filing of this case.

Debtor has elected to keep the Great Plains Drills, and will pay the remaining balance of the leases over a seven (7) year term with no interest. Based on these assumptions, Debtor believes that monthly payments of $818.98 will be paid to Hi Line Credit. Debtor reserves the right to pre-pay this debt.

## (c) CLASS THREE (UNSECURED CLAIMS)

Class Three consists of the general unsecured class of creditors.   According to the Schedules, there are approximately $143,025.94 in such unsecured claims.

Debtor will pay 100% of all such allowed claims over a seven (7) year period, with no interest, and regular monthly payments. All such payments will be shared on a pro-rata basis between all allowed claimants in this class. Based on these assumptions, Debtor estimates that the maximum payment required will be $1,702.69 per month.

**(d) CLASS FOUR (STOCK INTERESTS OF INSIDERS).**

Class Four consists of the stock or equity interests of the insider-equity security holders. Mr. Mohn and Mrs. Mohn shall retain their respective interests in the Debtor, as set forth above.

## 8. MEANS OF EXECUTION OF THE PLAN

As of the date of confirmation of the Plan, the Debtor shall be re-vested with all property of the estate, and shall continue to operate in its ordinary course of business. On the Effective Date, Debtor shall commence making distributions in accordance with the treatment of each class of creditor and /or interest holder discussed immediately above. All such distributions shall be funded from Debtor's current business operations, and Debtor will act as its own disbursement agent.

## 9. CONTINUING REPORTING REQUIREMENTS AND PAYMENT OF UNITED STATES TRUSTEES FEES

The Reorganized Debtor shall be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. §1930(a)(6). After confirmation, the Reorganized Debtor shall serve on the United States Trustee a monthly financial report for each month (or

portion thereof) that the case remains open. Such report shall be in the format prescribed by the United States Trustee.

## 10. CONTINUING JURISDICTION OF BANKRUPTCY COURT

Except as otherwise provided in the Plan, the Reorganized Debtor will retain, after confirmation of the Plan, and subject to any order entered by Bankruptcy Court, full right and power to do any of the following:

a) Object to the allowance of any claim;

b) Seek subordination of any claims;

c) Pursue any claims against any third parties, including but not limited to those based on theories of preference, fraudulent transfer, or any action arising under Chapter 5 of Bankruptcy Code;

d) Pursue any claims and enforce any rights arising under Bankruptcy Code in favor of a Trustee or Debtor in Possession;

e) Pursue any causes of action that the Reorganized Debtor may have as of the date on which an order confirming the Plan is entered, and that may not have been enforced or prosecuted by the Debtor prior to such date. Any and all causes of action that the Debtor may have had prior to confirmation of the Plan will survive confirmation of the Plan, will vest in the Reorganized Debtor, and will not be affected by confirmation or the Effective Date of the Plan, except as otherwise specifically provided in the Plan.

The Reorganized Debtor may object to the allowance of any claim or interest within the time period provided for in the order confirming the Plan, or as otherwise dictated by order of the court. The Reorganized Debtor's authority to object to the allowance of any claim will not be affected in any way by the Debtor's failure to object to the allowance of any claim for the purpose of voting.

## 11.   MANAGEMENT FOLLOWING CONFIRMATION

The Debtor does not anticipate any changes in management following confirmation of the Plan.   Mr. Mohn and Mrs. Mohn will continue to serve in their respective management capacities.

## 12.   LITIGATION MATTERS

As of the date of the Disclosure Statement, Debtor is involved in ongoing litigation against its previous insurance agent and insurance company in Prairie Wild Enterprises, Inc vs. Gayle Bofferding; Brown & Brown of Minnesota, Inc, a corporation and Westfield Insurance Company, a corporation, Court File 27-CV-O8-8397 ("Insurance Recovery Lawsuit").   The Debtor is awaiting the Judge's ruling as to the amount, if any, of recovery by the Debtor, which is due by September 30, 2009.   However, the Debtor does not anticipate the commencement of any other adversary proceedings following the confirmation of the Plan.   The Debtor reserves the right, however, to object to any claim filed in accordance with applicable Bankruptcy Rules.

# 13.   ALTERNATIVE TO THE PLAN

Debtor believes that the only realistic alternative to confirmation of the Plan is liquidation under Chapter 7.   The Debtor firmly believes that reorganization under Chapter 11 is preferable to liquidation under Chapter 7.   On liquidation, Debtor's only assets will be its interest in equipment, inventory, receivables, and cash, and the possibility of any avoidance actions.   At present, Debtor is unaware of any significant preference actions.   As indicated above, Debtor has expressly reserved the right, at Debtor's option, and following confirmation of the Plan, to pursue such actions.

Debtor believes that the Plan is feasible and has prepared projections appended hereto as Exhibit B, evidencing the feasibility of the Plan.   These projections suggest that the Plan is viable over the long term.   The feasibility of the Plan depends, at least in part, upon Debtor's ability to continue to meet or exceed existing and past levels of income and maintain costs at or below projected levels.

The Debtor believes that the liquidation value of its assets is approximately $386,101.45.   Debtor believes that the general unsecured creditors would receive no recovery in a Chapter 7 case, and that priority claimants may receive less than the full amount of their claims.   In 2007 the Debtor sold several pieces of its equipment at an auction to assist in paying back loans.   Since the equipment sold was of a highly specialized nature, specific to the Debtor's business, the proceeds from the sale were significantly less than the value the assets had to the Debtor.   Debtor estimates that the equipment sold for approximately one third (1/3) of the going concern value of the equipment.   Debtor estimates that the seed inventory would sell for approximately one

fourth (1/4) of the going concern value.   Debtor believes that if it is forced in to a liquidation under Chapter 7 its creditors would receive less than the full value of their claims.   On the other hand, Debtor's Plan contemplates a 100 percent recovery to the allowed secured claims, priority claimants and the general unsecured claimants.   The Debtor has prepared a liquidation analysis demonstrating this result, which is appended hereto as Exhibit C.   This liquidation analysis has been prepared by the Debtor and counsel and has not been independently audited or certified by outside appraisers or accountants.   The Debtor does believe, however, that in light of its experience in the business, the liquidation analysis reflects a realistic valuation of its assets upon liquidation.   In the event of a forced liquidation, either in the context of a Chapter 7 case or a subsequent default, the secured claimant will likely receive less than fifty percent (50%) of the full value on account of their secured claims, and there will be a minimal recovery, if any to the priority and unsecured class claimants.

### 14.   WAIVER AND RELEASE

Confirmation of the Plan shall constitute a release of all claims of all creditors against the Debtor except as provided for in the Plan, and to the extent authorized by 11 U.S.C. §1141.   Confirmation of the Plan will bind creditors to accept payments as provided for in the Plan, and oblige the Debtor to make the payments to creditors as provided for in the Plan.

### 15. OFFICIAL COMMITTEE OF UNSECURED CREDITORS

As of the date of this Disclosure Statement, there is no committee of unsecured creditors.

## 16.   POTENTIAL FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following is intended only as a summary of the potential tax consequences of acceptance or rejection of the Plan. No information provided in this Disclosure Statement, or the Plan, should be construed as the opinion of Debtor, or Debtor's counsel for the purpose of tax planning or reporting. Debtor has not sought a ruling from either the Internal Revenue Service, nor the Minnesota Department of Revenue on the potential tax consequences of the Plan.

The confirmation of the Plan may result in creditors and/or other interest holders being required to recognize either a tax gain or loss on the transactions set forth herein. Whether or not a creditor or interest holder is required to recognize gain or loss will depend on several factors, including, but not limited to, whether the creditors claim is personal or business related, the tax basis of the creditors claim, the creditor's treatment of the claim immediately before the filing of this case, and the organizational structure of the particular creditor. It is anticipated that the foregoing factors will be different for each creditor, and therefore the potential tax consequences will also be different for each creditor.

With respect to the Debtor, the most significant potential tax consequences are the potential for the loss or diminution of various tax attributes, net operating losses, if any, and   possible reduction in basis of various business assets. The Debtor has not determined what, if any, tax consequences may arise.

PURSUANT TO U.S. TREASURY REGULATIONS, PLEASE BE ADVISED THAT ANY FEDERAL TAX DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED,   TO AVOID ANY FEDERAL

TAX PENALTIES, AND IS PROVIDED SOLELY TO SUPPORT THE PROMOTION OR MARKETING OF THIS PLAN OF REORGANIZATION. ANY TAXPAYER RECEIVING THIS DISCLOSURE STATEMENT SHOULD SEEK ADVICE FROM AN INDEPENDENT TAX ADVISOR.

## 17.   DEBTOR'S ATTORNEY

Debtor has been represented during the pendency of this case by James T. Anderson, Esq.   Any inquiries concerning the Plan and Disclosure Statement may be forwarded to James T. Anderson, Esq. at 17736 Excelsior Boulevard, Minnetonka, Minnesota , 55345, telephone, (952) 356-6470, or by email to james@jtandersonlaw.com.

## 18.   CONCLUSION

The Debtor believes that the acceptance of this Plan is in the best interests of the Debtor, the estate, and all creditors herein.   The Debtor respectfully urges all creditors to vote in favor of the Plan.

Respectfully submitted,

**Prairie Wild Enterprises Inc.**

Dated: September 15, 2009          By:   */e/ Jon Mohn*
Jon Mohn
Prairie Wild Enterprises
Its President

# PRAIRIE WILD ENTERPRISES, INC.
## Exhibit A
Profit and Loss Statements

Q2 and Q3 2009

| | Apr - Jun 09 |
|---|---:|
| Ordinary Income/Expense | |
| Income | |
| Custom Seeding | 16,782.20 |
| Fertilizer | 225.00 |
| Food Plot Sales | 1,684.75 |
| Other Seed Sales | 286.00 |
| Seed Sales | 152,037.67 |
| Seeder Rental Income | 3,610.40 |
| Shipping and Finance Charges | 97.40 |
| Total Income | 174,723.42 |
| | |
| Cost of Goods Sold | |
| Production Costs | |
| Contract Labor | 648.91 |
| Coop | 3,444.07 |
| Employee Wages | 31,377.21 |
| Freight | 496.02 |
| Payroll Taxes | 2,700.38 |
| Rent-Land | 2,148.26 |
| Repairs and Maintenance | 21,852.65 |
| Seed | 24,413.24 |
| Vehicle Expense | 3,824.46 |
| Production Costs - Other | 0.00 |
| Total Production Costs | 90,905.20 |
| | |
| Seed Inventory Decr (Incr) | 9.99 |
| Total COGS | 90,915.19 |
| | |
| Gross Profit | 83,808.23 |
| | |
| Expense | |
| Advertising and Promotion | 755.74 |
| Dues & Fees | 3,972.79 |
| Insurance - Officers Life | 107.15 |
| Insurance - Other | 10,796.42 |
| Office Supplies and Expense | 4,081.42 |
| Professional Fees | 3,325.00 |
| Telephone | 1,532.95 |
| Travel Expense | 1,046.31 |
| Utilities | 2,387.85 |
| Total Expense | 28,005.63 |
| | |
| Net Ordinary Income | 55,802.60 |
| | |
| Other Income/Expense | |
| Other Income | |
| Interest Income | 2.50 |
| Total Other Income | 2.50 |
| | |
| Other Expense | |
| Interest Expense | 2,109.97 |
| Total Other Expense | 2,109.97 |

| | Jul - Sep 09 |
|---|---:|
| Ordinary Income/Expense | |
| Income | |
| Custom Seeding | 2,897.00 |
| Food Plot Sales | 626.80 |
| Mowing, Mulching, and Tilling | 1,650.00 |
| Seed Sales | 25,518.42 |
| Seeder Rental Income | 450.00 |
| Shipping and Finance Charges | 995.73 |
| Total Income | 32,137.95 |
| | |
| Cost of Goods Sold | |
| Production Costs | |
| Contract Labor | 973.42 |
| Coop | 4,146.26 |
| Employee Wages | 16,817.15 |
| Erosion Control | -3,087.50 |
| Freight | 155.93 |
| Payroll Taxes | 3,801.48 |
| Rent-Land | 4,866.19 |
| Repairs and Maintenance | 16,492.62 |
| Seed | -1,138.84 |
| Vehicle Expense | 120.98 |
| Production Costs - Other | 0.00 |
| Total Production Costs | 43,147.69 |
| | |
| Seed Inventory Decr (Incr) | 0.00 |
| Total COGS | 43,147.69 |
| | |
| Gross Profit | -11,009.74 |
| | |
| Expense | |
| Advertising and Promotion | -6,652.15 |
| Dues & Fees | 0.00 |
| Insurance - Other | 10,063.83 |
| Office Supplies and Expense | 1,688.34 |
| Professional Fees | -12,573.19 |
| Show Expense | 650.00 |
| Telephone | 2,007.07 |
| Travel Expense | 685.66 |
| Utilities | 1,530.83 |
| Total Expense | -2,599.61 |
| | |
| Net Ordinary Income | -8,410.13 |
| | |
| Other Income/Expense | |
| Other Expense | |
| Suspense | 1,250.00 |
| Interest Expense | 1,074.91 |
| Total Other Expense | 2,324.91 |
| | |
| Net Other Income | -2,324.91 |

| | |
|---|---|
| Net Ordinary Income | 55,802.60 |
| | |
| Other Income/Expense | |
| Other Income | |
| Interest Income | 2.50 |
| Total Other Income | 2.50 |
| | |
| Other Expense | |
| Interest Expense | 2,109.97 |
| Total Other Expense | 2,109.97 |
| | |
| Net Other Income | -2,107.47 |
| | |
| Net Income | 53,695.13 |

| | |
|---|---|
| Net Ordinary Income | -8,410.13 |
| | |
| Other Income/Expense | |
| Other Expense | |
| Suspense | 1,250.00 |
| Interest Expense | 1,074.91 |
| Total Other Expense | 2,324.91 |
| | |
| Net Other Income | -2,324.91 |
| | |
| Net Income | -10,735.04 |

**Prairie Wild Enterprises, Inc.**
**Exhibit B-1**
**Projected Revenues and Expenses For the First Quarter 2010**

| | January 2010 | February 2010 | March 2010 |
|---|---|---|---|
| **REVENUES** | | | |
| **Sales** | $ 25,000.00 | $ 17,000.00 | $ 50,000.00 |
| **Cash** | $ 6,000.00 | $ 3,300.98 | $ (7,398.04) |
| **Total Revenues** | $ 31,000.00 | $ 20,300.98 | $ 42,601.96 |
| **EXPENSES** | | | |
| **Utilities** | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 |
| **Insurance** | $ 2,600.00 | $ 2,600.00 | $ 2,600.00 |
| **Payroll Taxes** | $ 950.00 | $ 950.00 | $ 950.00 |
| **Employee Wages** | $ 3,800.00 | $ 3,800.00 | $ 3,800.00 |
| **Contract Labor** | $ - | $ - | $ - |
| **Rent - Equipment** | $ - | $ - | $ - |
| **Rent - Land** | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 |
| **Advertising** | $ 500.00 | $ 500.00 | $ 500.00 |
| **Repaiers & Maintenance** | $ 500.00 | $ 500.00 | $ 500.00 |
| **Diesel** | $ 250.00 | $ 250.00 | $ 400.00 |
| **Seed** | $ 500.00 | $ 500.00 | $ 2,000.00 |
| **U.S. Trustee Fees** | $ 325.00 | $ 325.00 | $ 650.00 |
| **Chapter 11 Payments\*** | $ 13,774.02 | $ 13,774.02 | $ 13,774.02 |
| **TOTAL DISBURSEMENTS** | $ 27,699.02 | $ 27,699.02 | $ 29,674.02 |
| **PROFIT/LOSS** | $ 3,300.98 | $ (7,398.04) | $ 12,927.94 |

**\*Chapter 11 Payments**
1) Unclassified Claims
   a) Internal Revenue Service    $   2,040.33
   b) Minnesota Dept. of Revenue  $    571.76
2) Classified Claims
   a) Class 1 (Secured)    $   9,270.26
   b) Class 2 (Secured)    $    818.98
   c) Class 3 (Unsecured)    $   1,072.69

**TOTAL MONTHLY CHAPTER 11 PAYMENTS**    $   13,774.02
**TOTAL ANNUAL CHAPTER 11 PAYMENTS**    $   165,288.24

| Prairie Wild Enterprises, Inc. | | | | | | |
|---|---|---|---|---|---|---|
| **Exhibit B-2** | | | | | | |
| **Projected Revenues and Expenses For the Remainder of 2010** | | | | | | |
| | | Q-2 | | Q-3 | | Q-4 |
| REVENUES | | | | | | |
| Sales | $ | 75,000.00 | $ | 75,000.00 | $ | 60,000.00 |
| Cash | $ | 12,927.94 | $ | 17,578.92 | $ | 24,229.90 |
| Total Revenues | $ | 87,927.94 | $ | 92,578.92 | $ | 84,229.90 |
| EXPENSES | | | | | | |
| Utilities | $ | 6,000.00 | $ | 6,000.00 | $ | 6,000.00 |
| Insurance | $ | 7,800.00 | $ | 7,800.00 | $ | 7,800.00 |
| Payroll Taxes | $ | 4,125.00 | $ | 4,125.00 | $ | 2,850.00 |
| Employee Wages | $ | 16,500.00 | $ | 16,500.00 | $ | 11,400.00 |
| Contract Labor | $ | 2,000.00 | $ | 2,000.00 | $ | - |
| Rent - Equipment | $ | - | $ | - | $ | - |
| Rent - Land | $ | 7,500.00 | $ | 7,500.00 | $ | 7,500.00 |
| Advertising | $ | 1,500.00 | $ | 1,500.00 | $ | 1,500.00 |
| Repaiers & Maintenance | $ | 2,000.00 | $ | 2,000.00 | $ | 1,500.00 |
| Diesel | $ | 2,500.00 | $ | 2,500.00 | $ | 1,500.00 |
| Seed | $ | 6,000.00 | $ | 4,000.00 | $ | 1,500.00 |
| U.S. Trustee Fees | $ | 650.00 | $ | 650.00 | $ | 650.00 |
| Chapter 11 Payments* | $ | 13,774.02 | $ | 13,774.02 | $ | 13,774.02 |
| TOTAL DISBURSEMENTS | $ | 70,349.02 | $ | 68,349.02 | $ | 55,974.02 |
| PROFIT/LOSS | $ | 17,578.92 | $ | 24,229.90 | $ | 28,255.88 |

**\*Chapter 11 Payments**

1) Unclassified Claims
   a) Internal Revenue Service     $    2,040.33
   b) Minnesota Dept. of Revenue     $    571.76
2) Classified Claims
   a) Class 1 (Secured)     $    9,270.26
   b) Class 2 (Secured)     $    818.98
   c) Class 3 (Unsecured)     $    1,072.69


**TOTAL MONTHLY CHAPTER 11 PAYMENTS**     $    13,774.02
**TOTAL ANNUAL CHAPTER 11 PAYMENTS**     $    165,288.24

**Prairie Wild Enterprises, Inc.**
**Exhibit B-3**
**Projected Revenues and Expenses For 2011**

| | Q-1 | Q-2 | Q-3 |
|---|---|---|---|
| **REVENUES** | | | |
| **Sales** | $ 85,000.00 | $ 90,000.00 | $ 60,000.00 |
| **Cash** | $ 25,255.88 | $ 47,081.86 | $ 65,532.84 |
| **Total Revenues** | $ 110,255.88 | $ 137,081.86 | $ 125,532.84 |
| **EXPENSES** | | | |
| **Utilities** | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 |
| **Insurance** | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 |
| **Payroll Taxes** | $ 2,850.00 | $ 4,125.00 | $ 4,125.00 |
| **Employee Wages** | $ 11,400.00 | $ 16,500.00 | $ 16,500.00 |
| **Contract Labor** | $ 2,000.00 | $ 2,500.00 | $ 1,000.00 |
| **Rent - Equipment** | | $ - | $ - |
| **Rent - Land** | $ 7,500.00 | $ 7,500.00 | $ 7,500.00 |
| **Advertising** | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 |
| **Repaiers & Maintenance** | $ 1,500.00 | $ 2,500.00 | $ 1,500.00 |
| **Diesel** | $ 2,000.00 | $ 2,500.00 | $ 2,000.00 |
| **Seed** | $ 6,000.00 | $ 6,000.00 | $ 2,000.00 |
| **U.S. Trustee Fees** | $ 13,774.02 | $ 13,774.02 | $ 13,774.02 |
| **Chapter 11 Payments*** | $ 650.00 | $ 650.00 | $ 650.00 |
| **TOTAL DISBURSEMENTS** | $ 63,174.02 | $ 71,549.02 | $ 64,549.02 |
| **PROFIT/LOSS** | $ 47,081.86 | $ 65,532.84 | $ 60,983.82 |

**\*Chapter 11 Payments**
1) Unclassified Claims
    a) Internal Revenue Service    $ 2,040.33
    b) Minnesota Dept. of Revenue    $ 571.76
2) Classified Claims
    a) Class 1 (Secured)    $ 9,270.26
    b) Class 2 (Secured)    $ 818.98
    b) Class 2 (Unsecured)    $ 1,072.69


**TOTAL MONTHLY CHAPTER 11 PAYMENTS**    $ 13,774.02
**TOTAL ANNUAL CHAPTER 11 PAYMENTS**    $ 165,288.24

| Prairie Wild Enterprises, Inc. | | | |
|---|---|---|---|
| Exhibit B-4 | | | |
| Projected Revenues and Expenses For Q-4 of 2011 | | | |
| | Q-4 | | |
| REVENUES | | | |
| Sales | $ 70,000.00 | | |
| Cash | $ 60,983.82 | | |
| Total Revenues | $ 130,983.82 | | |
| EXPENSES | | | |
| Utilities | $ 6,000.00 | | |
| Insurance | $ 8,000.00 | | |
| Payroll Taxes | $ 4,125.00 | | |
| Employee Wages | $ 16,500.00 | | |
| Contract Labor | $ - | | |
| Rent - Equipment | $ - | | |
| Rent - Land | $ 7,500.00 | | |
| Advertising | $ 1,500.00 | | |
| Repaiers & Maintenance | $ 1,500.00 | | |
| Diesel | $ 1,500.00 | | |
| Seed | $ 2,000.00 | | |
| U.S. Trustee Fees | $ 650.00 | | |
| Chapter 11 Payments* | $ 13,774.02 | | |
| TOTAL DISBURSEMENTS | $ 63,049.02 | | |
| PROFIT/LOSS | $ 67,934.80 | | |

**\*Chapter 11 Payments**
1) Unclassified Claims
   a) Internal Revenue Service     $     2,040.33
   b) Minnesota Dept. of Revenue     $     571.76
2) Classified Claims
   a) Class 1 (Secured)     $     9,270.26
   b) Class 2 (Secured)     $     818.98
   c) Class 3 (Unsecured)     $     1,072.69


**TOTAL MONTHLY CHAPTER 11 PAYMENTS**     $     13,774.02
**TOTAL ANNUAL CHAPTER 11 PAYMENTS**     $     165,288.24

**Prairie Wild Enterprises, Inc.**
**Exhibit B-5**
**Projected Revenues and Expenses For 2012, 2013 and 2014**

| | 2012 | 2013 | 2014 |
|---|---|---|---|
| **REVENUES** | | | |
| **Sales** | $ 350,000.00 | $ 385,000.00 | $ 400,000.00 |
| **Cash** | $ 67,934.80 | $ 148,560.78 | $ 229,636.76 |
| **Total Revenues** | $ 417,934.80 | $ 533,560.78 | $ 629,636.76 |
| **EXPENSES** | | | |
| **Utilities** | $ 30,000.00 | $ 32,500.00 | $ 35,000.00 |
| **Insurance** | $ 30,000.00 | $ 33,000.00 | $ 36,000.00 |
| **Payroll Taxes** | $ 20,000.00 | $ 23,750.00 | $ 27,500.00 |
| **Employee Wages** | $ 80,000.00 | $ 95,000.00 | $ 110,000.00 |
| **Contract Labor** | $ 7,500.00 | $ 8,000.00 | $ 9,500.00 |
| **Rent - Equipment** | $ - | $ - | $ - |
| **Rent - Land** | $ 30,000.00 | $ 30,000.00 | $ 30,000.00 |
| **Advertising** | $ 7,500.00 | $ 8,000.00 | $ 9,000.00 |
| **Repaiers & Maintenance** | $ 8,000.00 | $ 9,000.00 | $ 10,000.00 |
| **Diesel** | $ 20,000.00 | $ 23,000.00 | $ 26,000.00 |
| **Seed** | $ 20,000.00 | $ 24,000.00 | $ 28,000.00 |
| **U.S. Trustee Fees** | $ 2,600.00 | $ 3,900.00 | $ 3,900.00 |
| **Chapter 11 Payments\*** | $ 13,774.02 | $ 13,774.02 | $ 13,774.02 |
| **TOTAL DISBURSEMENTS** | $ 269,374.02 | $ 303,924.02 | $ 338,674.02 |
| **PROFIT/LOSS** | $ 148,560.78 | $ 229,636.76 | $ 290,962.74 |

**\*Chapter 11 Payments**
1) Unclassified Claims
   a) Internal Revenue Service     $    2,040.33
   b) Minnesota Dept. of Revenue     $    571.76
2) Classified Claims
   a) Class 1 (Secured)     $    9,270.26
   b) Class 2 (Secured)     $    818.98
   c) Class 3 (Unsecured)     $    1,072.69


**TOTAL MONTHLY CHAPTER 11 PAYMENTS**     $    13,774.02
**TOTAL ANNUAL CHAPTER 11 PAYMENTS**     $    165,288.24

| Prairie Wild Enterprises, Inc. | | | | | | |
|---|---|---|---|---|---|---|
| **Exhibit B-6** | | | | | | |
| **Projected Revenues and Expenses For 2012, 2013 and 2014** | | | | | | |
| | | 2015 | | 2016 | | 2017 |
| **REVENUES** | | | | | | |
| **Sales** | $ | 395,000.00 | $ | 415,000.00 | $ | 425,000.00 |
| **Cash** | $ | 290,962.74 | $ | 416,588.72 | $ | 530,277.51 |
| **Total Revenues** | $ | 685,962.74 | $ | 831,588.72 | $ | 955,277.51 |
| **EXPENSES** | | | | | | |
| **Utilities** | $ | 30,000.00 | $ | 32,500.00 | $ | 35,000.00 |
| **Insurance** | $ | 30,000.00 | $ | 33,000.00 | $ | 36,000.00 |
| **Payroll Taxes** | $ | 20,000.00 | $ | 23,750.00 | $ | 27,500.00 |
| **Employee Wages** | $ | 80,000.00 | $ | 95,000.00 | $ | 110,000.00 |
| **Contract Labor** | $ | 7,500.00 | $ | 8,000.00 | $ | 9,500.00 |
| **Rent - Equipment** | $ | - | $ | - | $ | - |
| **Rent - Land** | $ | 30,000.00 | $ | 30,000.00 | $ | 30,000.00 |
| **Advertising** | $ | 7,500.00 | $ | 8,000.00 | $ | 9,000.00 |
| **Repaiers & Maintenance** | $ | 8,000.00 | $ | 9,000.00 | $ | 10,000.00 |
| **Diesel** | $ | 20,000.00 | $ | 23,000.00 | $ | 26,000.00 |
| **Seed** | $ | 20,000.00 | $ | 24,000.00 | $ | 28,000.00 |
| **U.S. Trustee Fees** | $ | 2,600.00 | $ | 3,900.00 | $ | 3,900.00 |
| **Chapter 11 Payments*** | $ | 13,774.02 | $ | 11,161.21 | $ | 11,161.21 |
| **TOTAL DISBURSEMENTS** | $ | 269,374.02 | $ | 301,311.21 | $ | 336,061.21 |
| **PROFIT/LOSS** | $ | 416,588.72 | $ | 530,277.51 | $ | 619,216.30 |

**\*Chapter 11 Payments**
1) Unclassified Claims
   a) Internal Revenue Service      $     2,040.33
   b) Minnesota Dept. of Revenue    $      571.76
2) Classified Claims
   a) Class 1 (Secured)           $     9,270.26
   b) Class 2 (Secured)           $      818.98
   c) Class 3 (Unsecured)         $     1,072.69


**TOTAL MONTHLY CHAPTER 11 PAYMENTS**        $     13,774.02
**TOTAL ANNUAL CHAPTER 11 PAYMENTS**        $    165,288.24

**PRAIRIE WILD ENTERPRISES, INC.**

**EXHIBIT C-1**

**LIQUIDATION ANALYSIS**

| ASSET | ON GOING BUSINESS VALUE | LIQUIDATION VALUE | SECURED AND PRIORITY CLAIMS | NET TO NONPRIORITY UNSECURED CREDITORS |
|---|---|---|---|---|
| Cash on Hand/in Banks | 0.00 | 0.00 | | 0.00 |
| Accounts Receivable | 20,833.78 | 12,000.78 | | 0.00 |
| Property, Plant & Equip. | 534,300.00 | 178,100.00 | | 0.00 |
| Inventory | 784,002.68 | 196,000.67 | | |
| | | | | |
| TOTAL | 1,339,436.46 | 386,101.45 | 888,855.07 | 0.00 |
| | | | | |

**PRAIRIE WILD ENTERPRISES, INC.**

**EXHIBIT C-2**

**_SECURED AND PRIORITY CLAIMS_**

**_Secured Claims_**

**1. Co-op Credit Union of Montevideo**          $678,226.52

**2.   Hi Line Credit Union (Leases)**          $68,794.40

**Total Secured Claims**
**$ 747,020.92**

**_Priority Claims_**

1. IRS                                    $110,788.15

2. Minnesota Dept. Of Revenue            $31,046.00

**Total Priority Claims**
$**141,834.15**

**Total Secured and Priority Claims**
**$888,855.07**

In Re:                          Bky Case No. 09-34220

       Prairie Wild Enterprises, Inc.             Chapter 11 case

           Debtor.

## PLAN OF REORGANIZATION

COMES NOW Prairie Wild Enterprises, Inc., a Minnesota corporation ("Debtor"), the Debtor herein, and hereby presents its Plan of Reorganization.

## ARTICLE 1

## DEFINITIONS

The following terms used in the Plan of Reorganization shall have the following meanings:

1.1     "Effective Date" shall mean the thirtieth day after the Date on which an Order confirming the Plan is entered by the Court, and becomes a final non-appealable Order.

1.2     All other terms used in this Plan shall have the meanings ascribed to them in the Bankruptcy Code, Bankruptcy Rules, commercial practice, or ordinary usage.

## ARTICLE 2

## UNCLASSIFIED CLAIMS; DESCRIPTION AND TREATMENT

2.1 <u>Priority unsecured tax claims entitled to priority</u>. For the purposes of the Plan, these tax claims will include taxes assessed pre-petition but payable post-petition as well as taxes expected to be assessed post-petition. Based on a Proof of Claim dated July 9, 2009, Debtor estimates that the total amount of the Internal Revenue Service's unclassified claim will be approximately $110,788.15. Debtor estimates that the total amount of the Minnesota Department's unclassified claim will be approximately $31,046.00. These claims will be paid in full plus interest at the rate provided for by statute and regulation, fixed as of the Effective Date, which is currently estimated to be 4 percent. Payments will be made by even monthly distributions directly to the Internal Revenue Service, and the Minnesota Department of Revenue. Based on the foregoing assumptions, it is anticipated that regular monthly payments of $2,040.33 will be paid to the Internal Revenue Service, and payments of $571.76 will be paid to the Minnesota Department of Revenue. All priority tax claims, as herein set forth will be paid within five (5) years of the date of commencement of this case. Debtor reserves the right to accelerate payments to these creditors.

2.2 <u>Administrative claims entitled to priority</u> pursuant to § 503(b)(2) of the United States Bankruptcy Code.

These claims include attorney's fees for the Debtor's attorneys as may be approved and awarded by the Court pursuant to §330(a) of the United States Bankruptcy Code. The Debtor estimates aggregate administrative priority claims for professional persons will be approximately $10,000, or less, excluding any amounts currently held in trust by Debtor's attorney for matters relating to this representation and excluding any amounts previously

approved by Court Order.  Allowed administrative expenses entitled to priority pursuant to §503(b)(2), shall be paid in full to the extent allowed by court on the Effective Date from Debtor's operating revenues, or as otherwise may be agreed between Debtor and the Debtor's attorneys.

2.3     Administrative claims entitled to priority pursuant to § 503(b)(1) of the United States Bankruptcy Code.

Debtor estimates that there may be between $1,000.00 and $2,000.00 of current trade payables due and owing which would be entitled to priority under §503(b)(1).  All such claims shall be paid on the Effective Date or as they come due in the ordinary course of business, whichever is later.

2.4     United States Trustee's fees and other court costs and fees assessed or assessable pursuant to 28 U.S.C. § 1930 (a) and (b).

Debtor estimates that unpaid trustee's fees, court fees, and other fees assessable pursuant to these provisions and remaining unpaid as of the Effective Date will be under $2,000.00 and will be paid on or before the date of confirmation.  All such fees and expenses will be paid on the Effective Date or in the ordinary course of business from Debtor's operating revenues.

**ARTICLE 3**

**CLASSIFIED CLAIMS; DESCRIPTION AND TREATMENT**

3.1     Class One (Secured Claim).

Class One consists of the secured claim of Co-op Credit Union of Montevideo. ("Co-op").  Co-op has a judgment against the Debtor stemming from several loans in the

amount of $678,226.52, plus interest and attorneys fees from and after the Petition Date, and less any payments made by the Debtor after the Petition Date. The Debtor herewith provides for treatment of Co-op's allowed claim in its Plan of Reorganization as set forth below.

(1)     *Allowed Secured Claim.*  Co-op shall have an allowed secured claim in the amount of $678,226.52, plus interest, at a rate stated hereinafter, and costs, including attorneys fees, from and after the Petition Date, and less any payments made by the Debtor after the Petition Date ("Co-op's Secured Claim").

(2)     *Interest*.     Interest on Co-op's Secured Claim shall accrue at the rate of 4 per cent per annum.

(3)     *Collateral*.  Co-op's Secured Claim is secured by and shall continue to be secured by a lien on the Debtor's:

> a.     Inventory;
>
> b.     Accounts and other Rights to Payments, (including payment for property or services sold, leased, rented, licensed or assigned);
>
> c.     Equipment, (including machinery, vehicles, furniture, fixtures, shop equipment and office and record keeping equipment, and parts and tools);
>
> d.     General Intangibles, including customer lists, payment intangibles,); and
>
> e.     Proceeds and Products from the collateral, including parts, accessories, repairs, replacements, improvements and accessions and anything acquired upon the sale, lease, license, exchange or other disposition of the property, any rights and claims arising from the property and any collections and distributions on account of the property.
>
> f.     Proceeds from the litigation against its previous insurance agent and insurance company in Prairie Wild Enterprises, Inc vs. Gayle Bofferding; Brown & Brown of Minnesota, Inc, a corporation and Westfield Insurance Company, a corporation, Court File 27-CV-O8-8397.

(collectively, the "Collateral"). Co-op's Secured Claim is also secured by, and shall continue to be secured by a replacement lien on all property of the same types as the Collateral, now existing or at any time becoming property of the estate of the Debtor. Co-op's lien securing Co-op's Secured Claim is a first priority lien in the Collateral and shall survive confirmation of the plan. Co-op shall not be required to file any financing statements or other documents in any jurisdiction or to take any action to create, validate or perfect the lien that secures Co-op's Secured Claim.

(4)     *Payment.*     The Debtor shall pay Co-op's Secured Claim in accordance with the terms set forth herein. The Debtor shall pay monthly installments of $9,270.26 per month commencing the Effective Date of the Plan and continuing each month until January 15, 2017 at which time the entire unpaid principal balance, accrued interest and all other sums owing Co-op will be due and payable in full. Debtor estimates that the remaining balance to be paid to FNB, at the conclusion of the Plan payments will be approximately $0.00.

(5)     *Continuity of Loan Documents.*   The terms and conditions of all loan documents executed by the Debtor in favor of Co-op before the Petition Date or thereafter shall continue to apply and remain in full force and effect, to the full extent said terms are not inconsistent with the terms of the plan.

(6)     *Default.*     The Debtor's failure to perform in full accordance with any or all of the undertakings and obligations contained in the plan or the loan documents shall be an event of default, giving rise to Co-op's rights, to the full extent, as provided for in the loan documents executed by the Debtor in favor of Co-op before the Petition Date or thereafter, to enforce payment and exercise its rights as a secured creditor.

(7)    *Miscellaneous*.    The Debtor will execute any other reasonably necessary and appropriate documents in such form as is reasonably necessary and appropriate to carry out the intent of the Plan.   The parties that guarantied the debt owed to Co-op will ratify and reaffirm their guaranties of the indebtedness owed Co-op, as modified by the terms hereof, and will acknowledge that their guaranties continue in full force and effect.

3.2 <u>Class Two (Secured Claim).</u>

Class Two consists of one former executory contract (lease) with Hi Line Credit. The lease relates to three (3) Great Plains Drills, the lease had residuals at the end of the lease, and the Debtor would acquire full ownership of the drills at the end of the lease term. The lease expired prior to the filing of this case.

Debtor has elected to keep the Great Plains Drills, and will pay the remaining balance of the leases over a seven (7) year term with no interest. Based on these assumptions, Debtor believes that monthly payments of $818.98 will be paid to Hi Line Credit. Debtor reserves the right to pre-pay this debt.

3.3 <u>Class Three (Unsecured Claims).</u>

Class Three consists of the general unsecured class of creditors.   According to the Schedules, there are approximately $143,025.94 in such unsecured claims.

Debtor will pay 100% of all such allowed claims over a seven (7) year period, with no interest, and regular monthly payments. All such payments will be shared on a pro-rata basis between all allowed claimants in this class. Based on these assumptions, Debtor estimates that the maximum payment required will be $1,702.69 per month.

3.4 <u>Class Four (Stock Interests of Insiders).</u>

Class Four consists of the stock or equity interests of the insider-equity security holders. Mr. Mohn and Mrs. Mohn shall retain their respective interests in the Debtor as set forth above.

## ARTICLE 4

## <u>MEANS OF EXECUTION OF THE PLAN</u>

As of the date of confirmation of the Plan, the Debtor shall be re-vested with all property of the estate and shall continue to operate its business in the ordinary course. On the Effective Date of the Plan, Debtor shall commence making distributions in accordance with the treatment for each class of creditor discussed immediately above. All distributions will be funded by Debtor's current business operations, and Debtor will act as its own disbursement agent.

## ARTICLE 5

## <u>MANAGEMENT FOLLOWING CONFIRMATION</u>

The Debtor does not anticipate any changes in management following confirmation of the Plan.   Mr. Mohn and Mrs. Mohn shall continue to serve in their respective management capacities.

## ARTICLE 6

## <u>MODIFICATION OF THE PLAN</u>

The Debtor may alter, amend, or modify the Plan to the fullest extent provided in   11 U.S.C. § 1126 (a) or (b).

# ARTICLE 7

## RELEASE

Confirmation of the Plan shall constitute a complete waiver and release of all claims of all creditors against the Debtor except as provided for in the Plan, and to the extent authorized by 11 U.S.C. § 1141. Confirmation of the Plan will bind creditors to accept the payments provided for in the Plan and oblige the Debtor to make payments to creditors as provided for in the Plan.

# ARTICLE 8

## CONTINUING JURISDICTION OF THE BANKRUPTCY COURT

Except as otherwise provided in the Plan, the Reorganized Debtor will retain, after confirmation of the Plan, and subject to any order entered by the Bankruptcy Court, full right and power to do any of the following:

> a) Object to the allowance of any claim;
>
> b) Seek subordination of any claims;
>
> c) Pursue any claims against any third parties, including but not limited to those based on theories of preference, fraudulent transfer, or any action arising under Chapter 5 of the Bankruptcy Code;
>
> d) Pursue any claims and enforce any rights arising under the Bankruptcy Code in favor of a Trustee or Debtor in Possession;
>
> e) Pursue any causes of action that the Reorganized Debtor may have as of the date on which an order confirming the Plan is entered, and that may not have been enforced or prosecuted by the Debtor prior to such date. Any and all causes of action that the Debtor may

have had prior to confirmation of the Plan will survive confirmation of the Plan, will vest in the Reorganized Debtor, and will not be affected by confirmation or the Effective Date of the Plan, except as otherwise specifically provided in the Plan.

The Reorganized Debtor may object to the allowance of any claim or interest within the time period provided for in the order confirming the Plan, or as otherwise dictated by order of the court. The Reorganized Debtor's authority to object to the allowance of any claim will not be affected in any way   by the Debtor's failure to object to the allowance of any claim for the purpose of voting.

## ARTICLE 9

## CONTINUING REPORTING REQUIREMENTS AND PAYMENT OF

## <u>UNITED STATES TRUSTEE FEES</u>

Fees payable by the Debtor under 28 U.S.C. §1930 shall be paid in full on the Effective Date and thereafter as and when due until the Chapter 11 case is closed, dismissed, or converted. After confirmation, the Debtor shall submit quarterly operating reports to the United States Trustee each quarter (or portion thereof) until the Chapter 11 case is closed, dismissed or converted. Such reports shall be in the format prescribed by the United States Trustee.

Respectfully submitted,
**Prairie Wild Enterprises, Inc**.

Dated: September 15, 2009          By:*/e/ Jon Mohn*          
Jon Mohn,
Its President

**United States Bankruptcy Court**
**District of Minnesota**

IN RE:

Case No. **09-34220**

**Prairie Wild Enterprises Inc**

Chapter **11**

Debtor(s)

### SIGNATURE DECLARATION

☐ PETITION, SCHEDULES & STATEMENTS

☐ CHAPTER 13 PLAN

☐ SCHEDULES & STATEMENTS ACCOMPANYING VERIFIED CONVERSION

☐ AMENDMENT TO PETITION, SCHEDULES & STATEMENTS

☐ MODIFIED CHAPTER 13 PLAN

☑ OTHER (Please describe) **Chapter 11 Plan and Disclosure Statement**

I [We], the undersigned debtor(s) or authorized representative of the debtor, *make the following declarations under penalty of perjury:*

- The information I have given my attorney and provided in the electronically filed petition, statements, schedules, amendments, and/or chapter 13 plan, as indicated above, is true and correct;

- The information provided in the "Debtor Information Pages" submitted as a part of the electronic commencement of the above-referenced case is true and correct;

- **[Individual debtors only]** If no Social Security Number is included in the "Debtor Information Pages" submitted as a part of the electronic commencement of the above-referenced case, it is because I do not have a Social Security Number;

- I consent to my attorney electronically filing with United States Bankruptcy Court my petition, statements and schedules, amendments, and/or chapter 13 plan, as indicated above, together with a scanned image of this Signature Declaration and the completed "Debtor Information Pages," if applicable; and

- **[corporate and partnership debtors only]** I have been authorized to file this petition on behalf of the debtor.

Date: **September 15, 2009**

**X** ⟨signature⟩

Signature of Debtor or Authorized Representative

**Jon Mohn**
Printed Name of Debtor or Authorized Representative

**X**

Signature of Joint Debtor

Printed Name of Joint Debtor

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                    Bankruptcy Case No. 09-34220
                                          Chapter 11 Case

      Prairie Wild Enterprises, Inc.

      Debtor.

---

## UNSWORN CERTIFICATE OF SERVICE

---

      I, James T. Anderson, of the Law Office of James T. Anderson, 17736 Excelsior Boulevard, Minnetonka MN 55345, declare under penalty of perjury that on the 15th day of September, 2009, a copy of the **Application to Approve Proposed Plan and Disclosure Statement, Proposed Chapter 11 Plan and Disclosure Statement, and Proposed Order** was sent via U.S. Mail, postage prepaid to the Debtor at the address below, and to the U.S. Trustee Sarah J. Wencil, via e-notice.

---

US Trustee                                ustpregion12.mn.ecf@usdoj.gov

Sarah J Wencil on behalf of               Sarah.J.Wencil@usdoj.gov
U.S. Trustee

Prairie Wild Enterprises Inc
PO Box 289
Cottonwood, MN 56229

---

Executed on: September 15, 2009.


                                          **/e/ James T. Anderson_____**
                                          James T. Anderson

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:                              Bky Case No. 09-34220

Prairie Wild Enterprises Inc.,              Chapter 11 case


Debtor.

## ORDER CONDITIONALLY APPROVING
## DISCLOSURE STATEMENT, PURSUANT TO LOCAL RULE 3017-1.1

This matter came before the Court on the application of Prairie Wild Enterprises Inc., ("Debtor") pursuant to Local Rule 3017-1.1 for conditional approval of its Disclosure Statement, filed with the Court on September 15, 2009. Based on the Application,


IT IS HEREBY ORDERED:

1.    The Debtor's Disclosure Statement filed with the Court on September 15, 2009 is conditionally approved pursuant to Local Rule 3017-1.1.

2.    Objections to the Debtor's Disclosure Statement, if any, shall be served and filed not later than September 22, 2009.

3.    The Debtor shall serve and file its Chapter 11 Plan and conditionally approved Disclosure Statement, an approved ballot to accept or reject the Plan, and the Order conditionally approving the Disclosure Statement on all creditors, equity security holders, and other parties in interest as provided in Local Rule 2002-1(b), and file proof of service with the clerk.

4.    The hearing for final approval of the Disclosure Statement, and for confirmation of the Debtor's Chapter 11 Plan is set for _____, 2009.

Dated:_____


_____
U.S. Bankruptcy Judge